## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEVIN CROUSE, et al.,       )
                                    )
      Plaintiffs,          )
                                    )
  v.                      )         No. 07-CV-31-WDS
                                    )
CROSSROADS WORKFORCE    )
INVESTMENT BOARD, and     )
THERESE McMAHON,       )
                                    )
      Defendants.      )

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant McMahon's motion to dismiss (Doc. 20), to which plaintiffs have responded (Doc. 26). Plaintiffs filed a three count complaint seeking to recover for alleged violations of their civil rights pursuant to 42 U.S.C. §1983 for sexual discrimination, sexual harassment and retaliation.

## BACKGROUND

Under the Workforce Investment Act of 1998 ("WIA"), Congress appropriates monies to state agencies to support workforce investment activities. State agencies then disburse these funds to statewide and local organizations that provide community workforce investment systems. The Illinois Department of Commerce and Economic Opportunity is a state agency that, among other things, distributes WIA funds to organizations throughout Illinois. It does this through its Bureau of Workforce Development ("BWD"). The Crossroads Workforce Investment Board ("CWIB"), also known as Local Workforce Investment Area #23, is a non-profit corporation that receives funding from the BWD. CWIB uses its funding to provide workforce development programs to employers and employees in fourteen Illinois counties.

Between July 1, 2003, and November 16, 2005,[1] CWIB employed plaintiffs Ginger Crouse, Kevin Crouse, and Steve Weber at its corporate office in Marion County, Illinois. On December 8, 2004, Ginger Crouse contacted the Illinois Department of Commerce and Economic Opportunity to report personal complaints of sexual discrimination, sexual harassment, and retaliation by CWIB board member, Jerry Michels. She also complained of similar retaliation by board member, Marva Green, who took no action in regard to Crouse's complaint of sexual harassment that she and other women working at CWIB suffered from Michels.

Ginger Crouse's complaint was investigated by Erin Davis, a lawyer and equal opportunity officer employed by the Illinois Department of Commerce and Economic Opportunity. During Davis's investigation, Kevin Crouse and Steve Weber were interviewed as witnesses. Both supported Ginger Crouse's complaint. Ultimately, Davis concluded that Ginger Crouse had been subject to gender discrimination and unlawfully retaliated against. In her Notice of Final Action dated June 22, 2005, Davis recommended that Michels and Green either voluntarily resign or be removed from their CWIB board positions.

On June 22, 2005, the CWIB board met to discuss the Notice of Final Action prepared by Davis. Both Davis and Therese McMahon, the Deputy Director of BWD, were present at the closed meeting. Subsequently, Green and Michels were forced to resign from their board positions. Following the departure of Green and Michels, Ginger and Kevin Crouse allege that they experienced increased retaliation. All three plaintiffs allege that their work became more difficult to perform. In August of 2005, Ginger and Kevin Crouse allege that McMahon sent two staff members into the Crouses' offices to search for certain documents while they were on

---

[1] Plaintiffs' Complaint states that each Plaintiff was employed between "July 1, 2003 and November 16, 2003." *See* Compl. at ¶ 14. However, the complaint also states that all three Plaintiffs were terminated on November 16, 2005. *See* Compl. at ¶ 31.

vacation. Plaintiffs further allege that this search was uncalled for because only three months prior the State Fiscal Monitors had conducted a review of the Crouses' offices and concluded that there were no inappropriate findings or problems.

On November 16, 2005, the CWIB held another closed meeting. None of the plaintiffs were allowed to attend the meeting; however, certain of their legal representatives were allowed to be present. Plaintiffs allege that during the meeting McMahon threatened the CWIB board that it would have to repay approximately $750,000 in disallowed costs unless the board voted to fire all three plaintiffs that night. The board voted and all three plaintiffs were terminated. Plaintiffs subsequently filed charges with the Equal Employment Opportunity Commission and received timely right to sue letters.

In their three-count complaint, plaintiffs Ginger Crouse, Kevin Crouse, and Steve Weber allege that they suffered: (Count I) retaliation in violation of Title VII for engaging in a protected activity; (Count II) deprivation of various constitutional rights including their First Amendment, equal protection, and due process rights; and (Count III) intentional infliction of emotional distress based on the malicious conduct of McMahon. Both the CWIB and McMahon are named defendants. Therese McMahon seeks dismissal of the claims against her based on qualified immunity.

## ANALYSIS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must assume that all facts in the complaint are true and construe allegations in a light most favorable to the plaintiff. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hernandez v. City of Goshen, Ind.*, 324 F.3d 535, 537 (7th Cir. 2003). Dismissal is appropriate only it if appears beyond a doubt that no relief may be granted under any set of facts that could be proved consistent with the allegations in the

complaint.  *See Conley*, 355 U.S. at 45-46; *Veazy v. Commc'ns & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999).  Although a plaintiff need not set out in detail all the facts upon which a claim is based, the plaintiff must allege sufficient facts to outline a cause of action.  *See Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997).

I.     Qualified Immunity

Qualified immunity is a privilege "not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It is a privilege of "*immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.*  Because qualified immunity determines whether or not an official may even be haled into court, the Supreme Court has repeatedly reiterated that the question of qualified immunity must be resolved "at the earliest possible stage in litigation."  *Saucier v. Katz*, 533 U.S. 194, 201 (1991) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

A two-part analysis is required to determine whether an official is entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.  *See also Vose v. Kliment*, 506 F.3d 565, 568 (7th Cir. 2007).  First, the Court must determine whether the facts as alleged by plaintiffs, construed in a light most favorable to them, properly demonstrate that the official violated a constitutional right.  *Saucier*, 533 U.S. at 201.  Second, the Court must determine whether the right was clearly established.  *Id.*  Thus, the first inquiry requires the Court to assess the "existence or nonexistence of a constitutional right," while the second inquiry requires the Court to assess whether the contours of that right were so sufficiently clear that the official would reasonably understand that she was violating a constitutional right.  *Id.* at 202.

A.     First Amendment

Plaintiffs contend that McMahon, while acting under the color of state law, deprived them of their First Amendment rights in violation of 42 U.S.C. § 1983. Although the complaint does not specify how, the Court can reasonably infer, based on the pleadings, that the deprivation occurred when plaintiffs were terminated allegedly because they had previously engaged in protected speech. Thus, in order for McMahon to have violated plaintiffs' First Amendment rights, she must have retaliated against plaintiffs for their having properly exercised their freedom of speech.

In the Seventh Circuit, a First Amendment retaliation claim under § 1983 is valid only if it satisfies a three-step inquiry. *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006); *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). First, plaintiffs' speech must be constitutionally protected. *Phelan*, 463 F.3d at 790. Second, plaintiffs must demonstrate that "the alleged retaliatory activity was motivated by the constitutionally protected speech." *Id.* Finally, the defendant must demonstrate that it would have taken the same action regardless of the plaintiffs' speech. *Id.*

Here, plaintiffs argue that Ginger Crouse's sexual harassment complaint and Kevin Crouse and Steve Weber's subsequent corroboration of that complaint constitute constitutionally protected speech of public concern. Although plaintiffs are public employees who enjoy the right to freedom of speech, *see Gray v. Lacke*, 885 F.2d 399, 410 (7th Cir. 1989), as the Supreme Court made clear in *Pickering v. Bd. of Educ.*, any assessment of their First Amendment rights requires a balance between the plaintiffs' right to comment on matters of public concern against the right of the government to promote efficiency of its public service. *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 566 (1968)). Thus, in order to establish a constitutionally protected

right capable of balancing, plaintiffs must first prove that they were speaking on matters of public concern. *Id.*; *Vose*, 506 F.3d at 568.

The Supreme Court held in *Connick v. Myers* that "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." 461 U.S. 138, 147-48 (1983). In a similar case involving a retaliation claim based on a complaint of sexual harassment, the Seventh Circuit held that "although sexual harassment may inherently be a matter of public concern, our court has repeatedly held that we must look to the point of the speech to see if the plaintiff addressed a matter of public or private concern." *Gray*, 885 F.2d at 411 (citing *Vukadinovich v. Bartels*, 853 F.2d 1387, 1390 (7th Cir. 1988); *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985)). In *Gray*, the Seventh Circuit concluded that because the plaintiff complained to her supervisors in order to stop the sexual harassment against her, the "content, form, and context" of her communications were "related solely to the resolution of a personal problem" and as such did not constitute a matter of public concern able to be protected under the First Amendment. *Id.*

Plaintiffs contend that Ginger Crouse's complaint was a matter of public concern and thus is distinguishable from *Gray* because, in addition to herself, Ginger Crouse also complained of the sexual harassment that "other women suffered under Jerry Michels." *See* Compl. ¶ 39. Thus, Ginger Crouse's complaint was not solely related to the resolution of a personal problem, but rather was for the purpose of informing the CWIB about the harassment of all similarly situated female employees. However, the Court does not find this argument dispositive. Indeed, the plaintiff in *Gray* also filed her complaint "on behalf of herself and all other female communications operators." *Gray*, 885 F.2d at 402. Here, the content, form, and context of Ginger Crouse's complaint was to stop the sexual harassment she suffered from Michels.

Plaintiffs do not allege that Ginger Crouse complained of the treatment of other women when she filed her complaint with the Illinois Department of Commerce and Economic Opportunity, nor that she did so at any time during Davis's investigation. *See Phelan*, 463 F.3d at 791. Furthermore, plaintiffs have not pled that Ginger Course sought to bring her situation to the attention of anyone other than the parties that were in a situation to remedy her personal situation. *Id.* (citing *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998).

Likewise, Kevin Crouse and Steve Weber's corroboration of Ginger Crouse's sexual harassment compliant do not constitute matters of public concern. Plaintiffs have not pled that Kevin Crouse and, or Steve Weber ever spoke with anyone, be it Davis or the members of the CWIB board, about anything other than the specific instance of sexual harassment by Michels against Ginger Crouse. Nor does the complaint allege that their speech was for the purpose of vindicating their own rights or those of women other than Ginger Crouse. As such, the content, form, and context of their speech was for the purpose of vindicating the rights of no one other than those of Ginger Crouse.

For the foregoing reasons, neither Ginger Crouse, Kevin Crouse, or Steve Weber's speech constituted matters of public concern. Because their speech does not constitute matters of public concern, plaintiffs cannot establish that their speech is constitutionally protected. Because no constitutionally protected right exists in this instance, plaintiffs have failed to satisfy the first prong of the two-part qualified immunity inquiry.

B.    Equal Protection and Due Process

Here, the plaintiffs do not assert that McMahon retaliated against them on the basis of a protected trait or because of their membership in a particular class, or that they have a protected property interest, rather they argue McMahon retailed against them for Ginger Crouse's filing of

7

a sexual discrimination complaint and Kevin Crouse's and Steve Weber's subsequent support of that complaint. *See Boyd*, 384 F.3d at 898.

Because plaintiffs have failed to allege a constitutionally protected right under the equal protection clause or the due process clause, these claims cannot satisfy the first prong of the two-part qualified immunity inquiry, and are subject to dismissal.

## CONCLUSION

None of plaintiffs' § 1983 claims assert constitutionally protected rights. Therefore, Therese McMahon is entitled to qualified immunity because Count II fails to satisfy the first prong of the two-party qualified immunity inquiry articulated by the Supreme Court in *Saucier*.

Furthermore, the Court declines to exercise supplemental jurisdiction over plaintiffs' Count III state law claim, as no federal claims remain.

For the foregoing reasons, the Court **GRANTS** defendant Therese McMahon's motion to dismiss, and plaintiffs' claims against defendant Therese McMahon are **DISMISSED**.

**IT IS SO ORDERED.**

**DATE: March 31, 2008.**

**s/ WILLIAM D. STIEHL**
**District Judge**